UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RAUPP,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | Case No. EDCV 10-1389 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I. SUMMARY**

On September 22, 2010, plaintiff David Raupp ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion")[1] and ("Defendant's Motion"). The

---

[1] Although plaintiff filed two separate motions for summary judgment (Docket Nos. 13 & 15), the Court references only the most recent filing (Docket No. 15) since both pleadings appear to be substantially the same.

1

Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 23, 2010 Case Management Order, ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 31, 2008, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 9, 132, 135). Plaintiff asserted that he became disabled on February 2, 2002, due to paranoid schizophrenia and back, ankle, and leg problems. (AR 150). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel), plaintiff's mother and a vocational expert on March 16, 2010. (AR 19).

On April 26, 2010, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 9, 18). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative joint disease of his left ankle and schizophrenia (AR 11); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 11-12); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional exertional and nonexertional limitations (AR 12-13);[2] (4) plaintiff could not perform his past relevant work (AR 16); and (5) there are jobs that exist in

---

[2] The ALJ determined that plaintiff could (i) lift/carry 10 pounds frequently and 20 pounds occasionally; (ii) walk/stand two hours and sit six hours in an eight hour workday; (iii) perform simple repetitive tasks with 1-2 step tasks that contain little to no change in routine; and (iv) perform work only in an environment away from the general public which requires no decision making on the job. (AR 12-13).

significant numbers in the national economy that plaintiff could perform, specifically "table worker" and "assembler electrical equipment" (AR 17); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 14).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

| | | |
|---|---|---|
|1| (4) | Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five. |
|4| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred at step five in finding that plaintiff could perform the occupations of table worker and assembler electrical equipment because the level of complexity required by such jobs is inconsistent with plaintiff's limitations to "simple repetitive tasks with 1-2 step tasks that contain little to no change in routine." (Plaintiff's Motion at 2-9) (citing AR 13). The Court agrees. As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Law

If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). Where, as here, a claimant suffers from both exertional and nonexertional limitations, the Grids do not mandate a finding of disability based solely on the claimant's exertional limitations, and the claimant's non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular case, the Commissioner must consult a vocational expert.[3] Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); see
///

---

[3]The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir.), as amended (2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. See Tackett, 180 F.3d at 1101; see also Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information). The DOT is the presumptive authority on job classifications. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).[4] In order for an ALJ to accept vocational expert testimony

---

[4] Social Security rulings are binding on the Administration. See Terry, 903 F.2d at 1275. Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi, 486 F.3d at 1152 n.6.

that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citations omitted).

**B. Analysis**

A job's level of simplicity is addressed by its General Educational Development ("GED") reasoning development rating. Carney v. Astrue, 2010 WL 5060488, at *4 (C.D. Cal. Dec. 6, 2010) (citing Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005)). DOT job descriptions include a GED definition component which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Grigsby v. Astrue, 2010 WL 309013, *2 (C.D. Cal. Jan. 22, 2010). The GED component is comprised of discrete scales, including a scale for "Reasoning Development." Id. The GED reasoning development scale ranges from Level 1 (low) to Level 6 (high). Id. Levels 1 and 2 are defined as follows:

> Level 1    Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2    Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

Id. (citing DOT, Appendix C).

///

Here, the ALJ erred at step five because he found plaintiff not disabled based on testimony from the vocational expert which, without explanation, deviated from the DOT.

First, the vocational expert's testimony was inconsistent the DOT. In his hypothetical question to the vocational expert, the ALJ included a limitation to occupations involving "simple, repetitive, one to two-step job tasks" and specifically added that "there should be little to no change in the work routine from day to day." (AR 72-73). The vocational expert testified that, in spite of such limitations, plaintiff (or a hypothetical person with plaintiff's characteristics) could perform the occupations of table worker and assembler electrical equipment, both of which, according to the DOT, require a reasoning development level of 2. (AR 72-73); DOT §§ 734.687-014 ("Table Worker" a/k/a "Assembler"), 729.687-010 ("Assembler, Electrical Accessories I"). Although an individual who can perform "simple, repetitive" work is not necessarily precluded from Level 2 reasoning jobs, an individual who is also limited to "one-to-two-step job tasks" would be precluded from such jobs. Level 2 reasoning jobs involve "detailed but uninvolved written or oral instructions," which by definition is more complex than Level 1 reasoning jobs which are limited to "simple one-or two-step instructions." Grigsby, 2010 WL 309013 at *2 ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning."). Moreover, the ALJ's limitation to "little to no change in the work routine from day to day" is most consistent with jobs with Level 1 reasoning, which involve "standardized situations with occasional or no variables in or from these situations encountered on the job," as opposed to Level 2 reasoning jobs which require a claimant to "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, 1991 WL 688702.

///

1   Second, since, as defendant correctly points, the vocational expert did not
2 acknowledge that there was a conflict between his testimony and the DOT
3 (Defendant's Motion at 4) (citing AR 74), neither the vocational expert nor the
4 ALJ attempted to explain or justify the deviation in any manner.  Accordingly, the
5 vocational expert's testimony, which the ALJ adopted, could not serve as
6 substantial evidence supporting the ALJ's determination at step five that plaintiff
7 could perform the occupations of table worker and assembler electrical equipment.
8 Pinto, 249 F.3d at 846.
9   Finally, the Court cannot find such error harmless as defendant points to no
10 other persuasive evidence in the record which could support the ALJ's
11 determination at step five that plaintiff was not disabled.  See, e.g., id. (remand
12 warranted where ALJ found claimant not disabled at step four based "largely" on
13 vocational expert's testimony that conflicted with DOT, neither ALJ nor
14 vocational expert addressed the deviation, and ALJ otherwise "made very few
15 findings"); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ
16 erred in finding that claimant could return to past relevant work based on
17 vocational expert's testimony that deviated from DOT because ALJ "did not
18 identify what aspect of the [vocational expert's] experience warranted deviation
19 from the DOT, and did not point to any evidence in the record other than the
20 [vocational expert's] sparse testimony" to support the deviation, but error was
21 harmless in light of ALJ's alternative finding at step five, which was supported by
22 substantial evidence, that claimant could still perform other work in the national
23 and local economies that existed in significant numbers ).
24 ///
25 ///
26 ///
27 ///
28 ///

## V. CONCLUSION[5]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 31, 2011

                                             /s/
                                      Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE

---

[5] The Court need not, and has not adjudicated plaintiff's other challenge to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[6] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).